**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| LISA CAUSER, GLENN CAUSER | * | A CIVIL ACTION |
| and BRANDI CAUSER | * | |
| | * | |
| versus | * | NO. 3:18-cv-00779 |
| | * | |
| SHERIFF JASON ARD, INDIVIDUALLY | * | |
| AND IN HIS CAPACITY AS HEAD | * | JUDGE: Shelly D. Dick |
| OF THE LIVINGSTON PARISH | * | |
| SHERIFF'S OFFICE, DEPUTY | * | MAG: Richard L. Bourgeois, Jr |
| DAKOTA NAQUIN and DEPUTY | * | |
| (FNU) WINBURN | * | |
| Defendants | * | |

## COMPLAINT

NOW INTO COURT, come Plaintiffs, LISA CAUSER, GLENN CAUSER, AND

BRANDI CAUSER, who aver to this Honorable Court as follows:

## PARTIES

1. Plaintiffs LISA AND GLENN CAUSER are a married couple living and residing in

   the Parish of Livingston, State of Louisiana.

2. Plaintiff BRANDI CAUSER is the daughter of Lisa and Glenn Causer, and is a

   person of the full age of majority residing and domiciled in the Parish of Livingston,

   State of Louisiana.

3. Made Defendants in this matter are:

   a) SHERIFF JASON ARD, INDIVIDUALLY AND AS HEAD OF THE LIVINGSTON

   PARISH SHERIFF'S OFFICE, a person of the full age of majority who was at all

   times material hereto responsible for the hiring, retention, training, and supervision of

   all Livingston Parish Sheriff's Deputies, and for the implementation of the Sheriff

   Office's training, practices, customs, policies, and procedures;

1

b) DEPUTY DAKOTA NAQUIN, a person of the full age of majority who was at all times material hereto employed as a Deputy with the Livingston Parish Sheriff's Office, and who was acting in the course and scope of his employment;

c) DEPUTY (FIRST NAME UNKNOWN) WINBURN, a person of the full age of majority who was at all times material hereto employed as a Deputy with the Livingston Parish Sheriff's Office, and who was acting in the course and scope of his employment.

## JURISDICTION AND VENUE

4. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C §1331 inasmuch as this matter arises under 42 U.S.C. §1983, §1988, and the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United State Constitution, Louisiana state law, including Louisiana Civil Code Articles 2315, 2316, 2317, 2320, 2324, and other applicable law.

5. This Honorable Court has supplemental jurisdiction over all state law claims asserted herein pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this Honorable Court in part pursuant to 28 U.S.C §1391 inasmuch as a substantial part of the actions or omissions giving rise to the claims occurred within the Middle District of Louisiana.

7. At all times material hereto, defendants were persons acting under color of law within the meaning of 42 U.S.C. §1983.

## BACKGROUND FACTS

8. On February 21, 2018, Glenn & Lisa Causer placed a call to 911 requesting police assistance at their address in Denham Springs, Louisiana.

2

9. Mr. and Mrs. Causer were in a dispute with their adult daughter, who suffers from a bi-polar disorder and was angry because she was unable to obtain a ride to a substance abuse support group meeting.

10. At approximately 6:07 p.m. Deputy Naquin arrived to the home of the Causers responding to the 911 call.

11. According to Deputy Naquin he made contact with Mr. Causer who was standing in front of the home.

12. As he walked towards the front porch Deputy Naquin asked Mr. Causer to "step over there", to which Mr. Causer complied and walked in the opposite direction towards the street and away from the officer.

13. Mrs. Causer was standing in the middle of the front porch leaning on the front rail in full view of the officers and in a calm and nonthreatening posture.

14. Deputy Naquin then walked part of the way up the steps to the porch and asked Mrs. Causer "Where is the other party at".

15. Mrs. Causer replied, "In there, crying because she thinks she's going to jail".

16. According to Deputy Naquin he was able to look through a window and observe a white female in a bedroom of the residence pacing back and forth.

17. It was apparent that no threat was being presented to him or anyone else at the time.

18. Deputy Naquin then stated "Ma'am, come down here", at which point Mrs. Causer walked from the center of the porch to the top of the steps and Deputy Naquin stepped off of the steps on to the ground in front of the steps.

19. In his report, Deputy Naquin states that he presented his arm to Mrs. Causer as a signal to her that he would "assist her down the steps to safety". However, video footage of the

3

events shows that he had no intention of assisting Mrs. Causer but instead used his arm to signal to Mrs. Causer to walk forward, and he in fact walked backward and away from Mrs. Causer as she approached the top of the steps.

20. Deputy Naquin then stated to Mrs. Causer "ma'am come down here. Stand over here" gesturing to his left side in front of a vehicle in the front yard.

21. Mrs. Causer replied, "no, I want to stand right here", which was stated due to wishing to have further information from the deputy as to his intentions.

22. Before she finished her sentence, Deputy Naquin shouted in a loud and angry manner "Ma'am, come stand right here. I ain't going to tell you … okay" and then aggressively charged up the stairs.

23. Mrs. Causer was in the act of replying "I'm not even dressed" when Deputy Naquin came towards her in a threatening and forceful manner.

24. Mrs. Causer, who had taken no action to cause the officer to be so angry, was very surprised and overcome with fear as Deputy Naquin aggressively came towards her and reached for her arms.

25. Deputy Naquin then walked past Mrs. Causer and grabbed her left wrist manhandling Mrs. Causer towards him while placing his right hand on top of her left shoulder in what is known as an "arm bar takedown".

26. In his report, Deputy Naquin states that Mrs. Causer resisted "resulting in her falling to the ground, onto the front porch". However, video footage of the events shows that Mrs. Causer did not fall but was at all times under the complete control of Deputy Naquin and was taken to the ground with force and violence by Deputy Naquin, who then proceeded

4

to sit on top of Mrs. Causer while attempting to hand cuff her with her arms behind her back.

27. As Deputy Naquin was approaching Mrs. Causer, and before he had performed the arm bar takedown on her, Mr. Causer clearly notified Deputy Naquin of Mrs. Causer's pre-existing shoulder condition by stating "watch her shoulder, she had it replaced five times".

28. As Deputy Naquin was violently forcing Mrs. Causer to the ground and attempting to force her left arm behind her back Mrs. Causer was screaming with complaints of pain to her shoulder.  Deputy Naquin ignored Mrs. Causer's pleas without acknowledging or seeming to care the damage he was causing.

29. As Deputy Naquin, without care or concern, caused Mrs. Causer's arm to be forced behind her back Brandi Causer exited the residence onto the porch to advise the deputy that because of the previously mentioned shoulder surgeries Mrs. Causer's arm would not go behind her back.

30. Brandi Causer plead with Deputy Naquin to release Mrs. Causer's arm and handcuff her in front of her body all of which the overly aggressive Deputy Naquin ignored.

31. In his report, Deputy Naquin asserts that Brandi "physically intervened by pushing my shoulder with her hand". However, video footage of the events shows that Brandi simply touched the officer's hand in effort to get his attention.

32. Deputy Naquin violently pushed Brandi Causer backwards on at least two occasions. Deputy Winburn then placed Brandi Causer into handcuffs without incident.

33. Mrs. Causer made multiple requests to be cuffed with her hands in front of her body but the requests were ignored expressly refused by Deputy Naquin.

5

34. Mrs. Causer made multiple requests for an ambulance and for medical treatment but the deputies did not permit her permitted to be taken to a hospital or treated at the scene.

35. When an ambulance did arrive Deputy Naquin forged her signature to indicate that she had in fact refused treatment.

36. Instead of being taken for medical treatment Mrs. Causer was taken to jail and falsely arrested and accused of resisting an officer.

37. Once at the jail a nurse advised that Mrs. Causer needed medical attention and not until that point was she taken for medical treatment.

38. When Mrs. Causer asked Deputy Naquin what she did wrong he replied "you didn't listen".

39. The Employee Manual for the Livingston Parish Sheriff's Office provides that Livingston Parish Deputies will use the minimum amount of control necessary to compel compliance in accordance with State and Federal law.

40. The manual provides that the Livingston Parish Sheriff's Office adheres to a use of force policy that follows a progressive continuum scale, which provides for steps in the escalation of force.

41. The manual further provides that whenever force is used above the level of verbal compliance a supervisor is to be notified and the Deputy involved is prepare a written report.

42. The report is required to contain (a) an account of the events leading up to the use of force, (b) an accurate description of the incident, (c) a description of any intermediate weapons used, (d) a description of the injuries caused and treatment provided, and (e) a list of all participants and witnesses.

6

43. Pursuant to the manual Deputy Winburn should have also prepared a report of the incident, but he did not.

44. The Deputies present on the scene completely disregarded these policies and procedures.

45. Deputy Winburn, who was at all times present, failed to intervene and protect Plaintiffs upon witnessing the careless and aggressive acts of Deputy Naquin.

46. Deputy Winburn further escalated the violence by acting in an overly aggressive manner throughout the incident, by using vulgar and threatening language throughout the incident, and by failing to protect citizens of Livingston Parish during another officer's obviously violation of state and federal law.

## CAUSES OF ACTION

47. As a result of the actions of Defendants Mrs. Causer has suffered and continues to suffer serious and permanent injury to her shoulder.

48. As the above and foregoing allegations demonstrate, Defendants are liable to Mrs. Causer for (a) battery, (b) assault, (c) unlawful arrest, (d) false imprisonment, (e) intentional infliction of emotional distress, (f) cruel treatment, (g) failing to provide medical attention, (h) violation of the Constitution and other laws of the United States and of the State of Louisiana, (i) excessive use of force, (j) unreasonable use of force, and (k) for all other acts and omissions as will be shown at trial.

49. As a direct and proximate result of the said incidents by Defendants, Plaintiff Mrs. Causer suffered the following injuries and damages:

   a) Use of excessive force in violation of Plaintiff's civil rights under 42 U.S.C. §1983;

   b) Past, present and future pain and suffering;

7

c) Past, present and future mental anguish, and emotional pain and suffering;

d) Past, present and future medical bills and expenses;

e) Past, present and future loss of enjoyment of life;

f) Past, present and future embarrassment and humiliation;

g) Past, present and future fear;

h) All damages allowed under Civil Code Article 2315;

i) Attorney's fees pursuant to 42 U.S.C. § 1988;

j) Punitive damages against Deputy Naquin in his personal capacity; and

k) Judicial interest from the date of judicial demand until paid.

50. Mr. Causer has suffered a loss of consortium and a loss of love, affection and support due to the injuries to his wife. He has also suffered damages as a result of seeing his wife subjected to such treatment and having the injuries inflicted upon her, all pursuant to La.C.C. article 2315.6.

51. Brandi Causer has suffered damages of mental anguish and intentional infliction of emotional distress for watching her mother subjected to such treatment by the Officer and having the injuries inflicted upon her, all pursuant to La.C.C. article 2315.6.

52. Defendant Jason Ard, individually and as head of the Livingston Parish Sheriff's Office is vicariously liable unto Plaintiffs as a matter of Louisiana state law for the acts and omissions of his Deputies.

53. Defendant Jason Ard, individually and as head of the Livingston Parish Sheriff's Office is liable to Plaintiffs for his ratification and endorsement of, and deliberate indifference to, the conduct of his Deputies, his failure to adequately train and supervise his Deputies and for all other acts and omissions as will be shown at trial.

8

## PRAYER FOR RELIEF

WHEREFORE, considering the foregoing, Plaintiffs pray that after Defendants are served with this Complaint, and after being duly cited to appear and answer same, and the expiration of all legal delays and due proceedings be had, that there be judgment rendered in favor of Plaintiffs, and against Defendants jointly and *in solido*, for such general, special and punitive damages as are reasonable in the premises, together with legal interest from the date of judicial demand until paid, for reasonable attorney fees, for all costs of these proceedings, and for such other equitable relief to which Plaintiffs may be entitled.

Respectfully Submitted,

*/s/ Rusty M. Messer*

**RUSTY M. MESSER (30634)**
ASHLY VAN EARL (29167)
AIMEE E. KALOYARES (36883)
9497 Brookline Ave.
Baton Rouge, LA 70809
Telephone: (225) 687-1111
Facsimile: (225) 384-6762
*rusty@earlmesserlaw.com*
*ashly@earlmesserlaw.com*
*aimee@earlmesserlaw.com*