**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

LISA CAUSER, ET AL

VERSUS

SHERIFF JASON ARD, ET AL

CIVIL ACTION

18-779-SDD-RLB

**RULING**

This matter is before the Court on the *Motion to Dismiss Pursuant to Rule 12(b)(6)*[1] filed by Defendant, Deputy Cory Winburn ("Deputy Winburn"). Plaintiffs, Lisa Causer, Glenn Causer, and Brandi Causer ("Plaintiffs") filed an *Opposition*[2] to this motion, to which Deputy Winburn filed a *Reply*.[3] For the reasons set forth below, the Defendant's motion shall be granted, and Plaintiffs shall be given leave to amend their *Complaint*.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

On February 21, 2018, Plaintiffs Glenn and Lisa Causer were engaged in a dispute at their home with their adult daughter, Brandi, who "suffers from a bi-polar disorder and was angry because she was unable to obtain a ride to a substance abuse support group meeting."[4] The Causers called 911, requesting police assistance. Livingston Parish Sheriff's Deputies Dakota Naquin ("Deputy Naquin") and Cory Winburn were dispatched to the Causers' residence in Denham Springs, Louisiana. In their *Complaint*, the Causers allege that the deputies' response to the call for assistance played out as follows. When the deputies arrived on scene, they found Glenn Causer standing in front of the home.

---

[1] Rec. Doc. No. 17.
[2] Rec. Doc. No. 24-1 (incorrectly styled as a *Reply*).
[3] Rec. Doc. No. 33.
[4] Rec. Doc. No. 1, p. 3, ¶ 9.
52926

Deputy Naquin asked him to step toward the street, which he did.[5] Lisa Causer was allegedly standing in the middle of the front porch "in a calm and nonthreatening posture."[6] Deputy Naquin asked Lisa Causer where the "other party" was, and she replied, "in there, crying because she thinks she's going to jail."[7] After climbing the porch steps to look in a window, where he observed Brandi Causer "pacing back and forth," Deputy Naquin asked Lisa Causer to step off of the front porch, stating, "Ma'am, come down here," and waited at the bottom of the steps for her to descend.[8]

Plaintiffs allege that Deputy Naquin "used his arm to signal to Mrs. Causer to walk forward," as she remained on the front porch. Deputy Naquin then allegedly stated again, "Ma'am, come down here. Stand over here," indicating that she should stand by a vehicle in the front yard.[9] Lisa Causer replied, "no, I want to stand right here."[10] Plaintiffs allege that, "before [Lisa Causer] finished her sentence," Deputy Naquin "shouted in a loud and angry manner 'Ma'am, come stand right here. I ain't going to tell you . . . okay' and then aggressively charged up the stairs."[11] As Deputy Naquin came toward her, Lisa Causer allegedly said, "I'm not even dressed."[12]

Then, Plaintiffs allege, Deputy Naquin grabbed Lisa Causer's left wrist and "manhandl[ed] [her] towards him while placing his right hand on top of her left shoulder in what is known as an 'arm bar takedown.'"[13] At this point, Glenn Causer allegedly told the

---

[5] Rec. Doc. No. 1, p. 3, ¶ 11-12.
[6] Rec. Doc. No. 1, p. 3, ¶ 13.
[7] Rec. Doc. No. 1, p. 3, ¶ 14-15.
[8] Rec. Doc. No. 1, p. 3, ¶ 18.
[9] Rec. Doc. No. 1, p. 4, ¶ 20.
[10] Rec. Doc. No. 1, p. 4, ¶ 21.
[11] Rec. Doc. No. 1, p. 4, ¶ 22.
[12] Rec. Doc. No. 1, p. 4, ¶ 23.
[13] Rec. Doc. No. 1, p. 4, ¶ 25.
52926

deputy to "watch her shoulder, she had it replaced five times."[14] Nevertheless, Plaintiffs claim, Deputy Naquin "ignored Mrs. Causer's pleas"[15] and "was violently forcing [her] to the ground and attempting to force her left arm behind her back" as she "was screaming with complaints of pain to her shoulder."[16] The Causers' daughter Brandi exited the home and walked out onto the porch "to advise the deputy that because of the previously mentioned shoulder surgeries Mrs. Causer's arm would not go behind her back."[17] Plaintiffs allege that Deputy Naquin "violently pushed Brandi Causer backwards on at least two occasions" after she touched him "in effort [sic] to get his attention."[18] Deputy Winburn, the other deputy who responded to the call for assistance, then "placed Brandi Causer into handcuffs without incident."[19]

While Lisa Causer's hands were cuffed behind her back, Deputy Naquin allegedly forged her signature to indicate that she had refused medical treatment, despite the fact that she allegedly made multiple requests for an ambulance and medical treatment.[20] When Lisa Causer asked the Deputy "what she did wrong," he allegedly told her, "you didn't listen."[21] Per Plaintiffs, the above-described events of February 21, 2018 amounted to Lisa Causer being "falsely arrested."[22]

Plaintiffs filed this lawsuit against multiple Defendants pursuant to 42 U.S.C. §1983, alleging that Lisa Causer suffered constitutional violations arising out of her

---

[14] Rec. Doc. No. 1, p. 5, ¶ 27.
[15] Rec. Doc. No. 1, p. 5, ¶ 28.
[16] Rec. Doc. No. 1, p. 5, ¶ 28.
[17] Rec. Doc. No. 1, p. 5, ¶ 29.
[18] Rec. Doc. No. 1, p. 5, ¶ 31-32.
[19] Rec. Doc. No. 1, p. 5, ¶ 32.
[20] Rec. Doc. No. 1, p. 5, ¶ 34, 35.
[21] Rec. Doc. No. 1, p. 6, ¶ 38.
[22] Rec. Doc. No. 1, p. 6, ¶ 36.
52926

"unlawful arrest" and the allegedly excessive use of force by Defendants. Lisa Causer also asserts a litany of state law claims, including battery, assault, false imprisonment, intentional infliction of emotional distress, cruel treatment, and failing to provide medical attention. For his part, Glenn Causer asserts a claim for loss of consortium pursuant to Louisiana Civil Code article 2315.6,[23] while both Glenn and Brandi Causer assert "bystander" claims under the same article, arising out of suffering caused by witnessing the arrest of Lisa Causer.[24]

The instant *Motion* seeks to dismiss the all of Causers' claims against Deputy Cory Winburn, who argues that the "Complaint is devoid of any facts that would give rise to liability."[25] In fact, Deputy Winburn notes, the factual allegations set forth at Paragraphs 32 and 43 in the *Complaint* ("Deputy Winburn then placed Brandi Causer into handcuffs without incident" and "Pursuant to the manual Deputy Winburn should have also prepared a report of the incident, but he did not," respectively) give no indication that he "used any force upon any plaintiff." Therefore, he contends, "[P]laintiffs' claims for assault, battery, cruel treatment, excessive use of force, and unreasonable use of force cannot possibly stand."[26]

Apart from those factual allegations, the *Complaint* contains only two other mentions of Deputy Winburn, at Paragraphs 45 and 46:

45. Deputy Winburn, who was at all times present, failed to intervene and protect Plaintiffs upon witnessing the careless and aggressive acts of Deputy Naquin.
46. Deputy Winburn further escalated the violence by acting in an overly aggressive manner throughout the incident, by using vulgar

---

[23] Rec. Doc. No. 1, p. 8, ¶ 51.
[24] Rec. Doc. No. 1, p. 8, ¶ 50-51.
[25] Rec. Doc. No. 17-1, p. 3.
[26] Rec. Doc. No. 17-1, p. 4.
52926

and threatening language throughout the incident, and by failing to protect citizens of Livingston Parish during another officer's obviously [sic] violation of state and federal law.

Deputy Winburn characterizes these allegations as merely "legal conclusions."[27]

In their *Opposition*, Plaintiffs argue that the above-quoted allegations at Paragraphs 45 and 46 establish that Winburn "was on the scene, that he either acted or failed to act in violation of both policy and procedure of LPSO and the Constitution, and that his actions caused or contributed to the injuries suffered by Plaintiffs."[28] Because the "failure to protect a suspect from the use of excessive force by other officers is a basis for a Section 1983 claim,"[29] Plaintiffs believe that their allegations against Deputy Winburn should survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court will address the claims in turn.

## II. LAW AND ANALYSIS

### A. Motion to Dismiss Standard

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[30] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[31] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[32] In *Twombly*, the United States Supreme

---

[27] Rec. Doc. No. 17-1, p. 5.
[28] Rec. Doc. No. 24-1, p. 2.
[29] Rec. Doc. No. 24-1, p. 4.
[30] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[31] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[32] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).
52926

Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[33] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[34] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[35] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[36] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[37] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[38]

### B. Section 1983 Claims and Qualified Immunity

To state a claim under Section 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.[39] Plaintiffs

---

[33] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter *Twombly*).
[34] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "*Iqbal*").
[35] *Twombly*, 550 U.S. at 570.
[36] *Iqbal*, 556 U.S. at 678.
[37] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[38] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[39] *See Lefall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir.1994).

52926

allege that Deputy Winburn violated their Fourth Amendment right to be free from excessive force and false arrest. The Court turns to these claims.

### 1. Excessive Force

"To prevail on an excessive force claim, a plaintiff must establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."[40] Plaintiffs do not allege that Deputy Winburn used force at any time. In fact, the only physical *action* that he is alleged to have taken is placing Brandi Causer in handcuffs, which, by Plaintiffs' own admission, took place "without incident."[41] Plaintiffs urge the court to consider their allegation that "the two officers responded together to the call out"[42] and to conclude that there is nothing in the Complaint that would allow Deputy Winburn to "somehow factually remove himself for any liability for what transpired while he was present on the scene."[43] However, Plaintiffs' allegations involving the use of force all concern Deputy Naquin, and the Court will not infer that Deputy Winburn participated in that use of force without some plausible factual allegations suggesting such. Therefore, to the extent that Plaintiffs intended to bring a claim under § 1983 for excessive use of force against Deputy Winburn, that claim is dismissed without prejudice for failure to plead facts in support of the cause of action.[44]

---

[40] *Ramirez v. Knoulton,* 542 F.3d 124, 128 (5th Cir. 2008) (internal quotations and citations omitted).
[41] Rec. Doc. No. 1, p. 5, ¶ 32.
[42] Rec. Doc. No. 24-1, p. 5.
[43] Rec. Doc. No. 24-1, p. 5.
[44] Plaintiffs' claim for cruel treatment shall be dismissed without prejudice for the same reasons, given that Plaintiffs cite no independent authority for this cause of action and this Court has previously recognized cruel treatment as derivative of a § 1983 claim for excessive force. See *Rice v. Reliastar Life Ins. Co.*, No. CIV.A. 11-111-BAJ, 2015 WL 3456622 at *1, n. 2 (M.D. La. May 29, 2015).
52926

## 2. Bystander Liability

Plaintiffs assert that Deputy Winburn is liable under § 1983 for "fail[ing] to intervene and protect [them] upon witnessing the careless and aggressive acts of Deputy Naquin."[45] The Fifth Circuit has held that "an officer may be liable under § 1983 under a theory of bystander liability where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."[46] In his *Motion to Dismiss*, Deputy Winburn correctly notes that Plaintiffs make no allegation "establishing that he made a deliberate choice not to act"[47] or showing Deputy Winburn's "relative position to Deputy Naquin when the alleged force was used [or] whether Deputy Winburn could clearly see that use of force."[48]

Plaintiffs contend that they lack factual allegations to plead in support of their bystander liability claim because Deputy Winburn did not file a police report, in contravention of LPSO policy. Therefore, they argue, "the allegation that Deputy Winburn failed to make a report is the factual allegation that the defendant failed in his duties as an officer, that he was complacent and cooperating with the actions of Deputy Naquin."[49] The Court is not persuaded by this line of argument. Deputy Winburn's alleged failure to file a report does not relieve Plaintiffs of the requirement to plead in a manner that gives rise to more than a sheer possibility that Deputy Winburn acted unlawfully. It would be unreasonable for the Court to infer liability for constitutional violations based on the lack

---

[45] Rec. Doc. No. 1, p. 7, ¶ 45.
[46] *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cty.*, 302 F.3d 188, 204 (4th Cir. 2002)).
[47] Rec. Doc. No. 17-1, p. 8.
[48] *Id.*
[49] Rec. Doc. No. 24-1, p. 5.
52926

of a police report, and it is not sufficient under the motion to dismiss standard for Plaintiffs to conclusorily state that it is plausible that Deputy Winburn was necessarily "working with . . . communicating . . . and was thus sanctioning the actions of or participating in the actions of Deputy Naquin."[50] Moreover, Plaintiffs have cited no authority in support of this argument. The Court agrees with Deputy Winburn; pleading that he was on the scene and that he "failed to intervene" constitutes only a bare bones recitation of the elements of a claim for bystander liability. Accordingly, Plaintiffs' bystander liability claim is dismissed without prejudice.

### 3. False Arrest

Deputy Winburn moves to have the § 1983 claim for false arrest dismissed because, he argues, "there are absolutely no facts pled in the Complaint to establish an absence of probable cause for [him] to have handcuffed"[51] any of the Plaintiffs. Indeed, the Fifth Circuit has held that, in order to prevail on a claim for false arrest, the plaintiff must show that she was arrested without probable cause.[52] The only person that Deputy Winburn is alleged to have arrested is Brandi Causer, who he "placed into handcuffs without incident."[53] Brandi Causer has not asserted a § 1983 claim for false arrest, however; only Lisa Causer has. There is no allegation that Deputy Winburn arrested Lisa Causer, and to the extent that Plaintiffs are attempting to assert a claim for bystander liability with respect to Lisa Causer's allegedly false arrest, that claim fails for the same reason described above with respect to the bystander liability claim for excessive force;

---

[50] Rec. Doc. No. 24-1, p. 6.
[51] Rec. Doc. No. 17-1, p. 10.
[52] *Thomas v. Pohlmann,* 681 F. App'x 401, 406 (5th Cir. 2017) (citing *Burge v. Par. of St. Tammany*, 187 F.3d 452, 480 (5th Cir. 1999)).
[53] Rec. Doc. No. 1, p. 5.
52926

namely, Plaintiffs have not pled with specificity Deputy Winburn's knowledge of a violation, his opportunity to prevent it, or his affirmative decision not to act. Accordingly, Plaintiffs' false arrest claim under § 1983 is dismissed without prejudice as to Deputy Winburn.

### 4. Qualified Immunity

In his *Motion to Dismiss*, Deputy Winburn asserts that he "is entitled to and hereby pleads qualified immunity with respect to all claims asserted by plaintiffs under § 1983."[54] When the defense of qualified immunity is raised in a Rule 12(b)(6) motion, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness'."[55] The plaintiff must support his claim with "sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts."[56] When greater detail is required to address the defense of qualified immunity, the Court may insist that a plaintiff file a reply pursuant to Federal Rule of Civil Procedure 7(a) tailored to an answer pleading the defense of qualified immunity.[57]

The Court does not reach the qualified immunity analysis on this motion, because it finds that all of Plaintiffs' claims pursuant to 42 U.S.C. § 1983 shall be dismissed for failure to meet the pleading standard required to survive a Rule 12(b)(6) motion to dismiss. However, if Plaintiffs choose to amend their *Complaint* in accordance with the leave to amend granted below, they will also be required to file a reply pursuant to FRCP 7(a) that answers the asserted defense of qualified immunity.

---

[54] Rec. Doc. No. 17-1, p. 10.
[55] *McClendon*, 305 F.3d at 323 (quoting *Behrens v. Pelletier*, 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996)).
[56] *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir.1995) (en banc).
[57] *Id.* at 1433–34.
52926

### C. State Law Claims[58]

#### 1. Intentional Infliction of Emotional Distress

Lisa Causer has asserted a claim for international infliction of emotional distress.[59] The Louisiana Supreme Court has held that:

> in order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.[60]

In the *Complaint*, Lisa Causer asserts that she was "very surprised and overcome with fear"[61] during her interaction with Deputy Naquin, and she was "screaming with complaints of pain to her shoulder" while the Deputy "ignored [her] pleas without acknowledging or seeming to care the damage he was causing."[62] Those allegations are specific to Deputy Naquin and cannot give rise to liability for intentional infliction of emotional distress (IIED) as to Deputy Winburn. Plaintiffs argue that their allegation that Deputy Winburn used vulgar language during Lisa Causer's arrest suffices to make out a claim for IIED.[63] As Deputy Winburn notes in his *Reply*, however, the Louisiana Supreme Court has held that "rough language" is not an appropriate basis for an IIED claim.[64] In fact, the Louisiana Supreme Court has further held that "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds

---

[58] The Court exercises supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.
[59] Rec. Doc. No. 1, p. 7.
[60] *Nicholas v. Allstate Ins. Co.*, 1999-2522 (La. 8/31/00), 765 So. 2d 1017, 1022 (quoting *White*, 585 So.2d at 1209).
[61] Rec. Doc. No. 1, p. 4.
[62] Rec. Doc. No. 1, p. 5.
[63] Rec. Doc. No. 24-1, p. 5.
[64] *White v. Monsanto*, 585 So.2d 1205, 1209 (La. 1991).
52926

of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."[65] Plaintiffs have not pleaded factual allegations that would allow the Court to infer that that Deputy Winburn intended to cause emotional distress, or that his use of language rose to the "utterly intolerable" level that can give rise to IIED liability. Accordingly, Lisa Causer's claim for intentional infliction of emotional distress is hereby dismissed without prejudice as to Deputy Winburn.

### 2. Bystander Tort Claims

Glenn and Brandi Causer, Lisa Causer's husband and daughter, have asserted bystander claims under Louisiana Civil Code article 2315.6 for their own alleged injuries that occurred due to witnessing the arrest of their wife and mother. In Louisiana, to sustain a bystander claim, "a plaintiff must establish: (1) that he or she 'view[ed] an event causing injury to another person, or ... [came] upon the scene soon thereafter'; (2) a sufficiently close relationship to the direct victim as defined by the relevant code article; (3) that 'the injured person ... suffer[ed] such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience'; and (4) 'the claimant's mental anguish or emotional distress must be severe, debilitating, and foreseeable.'"[66] "A non-exhaustive list of examples of serious emotional distress includes neuroses, psychoses, chronic depression, phobia, and shock."[67]

---

[65] *Id.*
[66] *Curran v. Aleshire*, 67 F.Supp.3d 741, 768 (quoting La. C.C. art. 2315.6.).
[67] *Jenkins*, 986 So.2d at 252-53 (citing *Lejeune*, supra; *Norred v. Radisson Hotel Corporation*, 950748 (La.App. 1st Cir.12/15/95), 665 So.2d 753).

Neither Glenn nor Brandi Causer has gone beyond merely reciting the elements of a bystander claim. Although both have a sufficiently close relationship to recover under the code article, and both allege to have been on the scene at the time of Lisa Causer's injury, both parties simply claim to have "suffered damages," or, in Brandi's case, "suffered damages of mental anguish."[68] Such allegations are both overly general; moreover, Louisiana courts have held that the type of serious emotional distress for which recovery is available under La. C. c. art 2315.6 "goes well beyond simple mental pain and anguish. Compensation for mental pain and anguish over injury to a third person should only be allowed where the emotional injury is both severe and debilitating."[69] Because there has been no allegation of severe and debilitating mental anguish, nor any allegations that the Causers' mental anguish was foreseeable, Glenn and Brandi Causer's claims under La. C. C. art. 2315.6 are hereby dismissed without prejudice.

### 3. Loss of Consortium

Under Louisiana law, a cause of action exists for "loss of consortium, service, and society" for the spouse of an injured victim.[70] "The compensable elements of a claim for loss of consortium ... include loss of love and affection, loss of companionship, loss of material services, loss of support, impairment of sexual relations, loss of aid and assistance, and loss of felicity."[71] Glenn Causer asserts a claim for loss of consortium, alleging that he "suffered a loss of consortium and a loss of love, affection and support due to the injuries to his wife."[72] In order to avoid dismissal for failure to state a claim, a

---

[68] Rec. Doc. No. 1, p. 8.
[69] *Nelson v. Ruston Longleaf Nurse Care Center, Inc.*, 32,718 (La. App. 2 Cir. 2/1/00), 751 So.2d 436, 438.
[70] See e.g. Ferrell v. Fireman's Fund Ins. Co., 696 So.2d 569, 573 (La.1997).
[71] *Id.* (citing *Choyce v. Sisters of Incarnate Word*, 642 So.2d 287 (La. 2nd Cir.1994)).
[72] Rec. Doc. No. 1, p. 8.
52926

plaintiff must plead specific facts, which Glenn Causer here has failed to do; his claim is merely a recitation of the elements of loss of consortium. Should Plaintiffs amend their *Complaint* in accordance with this Court's *Ruling* (see below), more circumstances and facts surrounding the loss of consortium must be pled if the claim is to avoid dismissal. On this motion, however, the loss of consortium claim is dismissed without prejudice.

### 4. Assault and Battery

Lisa Causer asserts a claim for assault and battery against Deputy Winburn.[73] Under Louisiana law, "[a] harmful or offensive contact with a person, resulting from an act intended to cause him to suffer such a contact, is a battery."[74] Based on the allegations in the *Complaint*, the only person with whom Deputy Winburn made contact is Brandi Causer. As such, he cannot be liable for battery with respect to Lisa Causer. Likewise, an assault is "the imminent threat of a battery."[75] Plaintiffs do not assert that Lisa Causer experienced such a threat from Deputy Winburn or plead facts that suggest that she did. Accordingly, Plaintiffs' state law claims for assault and battery are dismissed without prejudice with respect to Deputy Winburn.

### 5. False Imprisonment

Lisa Causer also asserts a claim for false imprisonment. Under Louisiana law, "[f]alse imprisonment is the unlawful and total restraint of the liberty of the person."[76] It "consists of the following two essential elements: (1) detention of the person; and (2) the

---

[73] Rec. Doc. No. 1, p. 7, ¶ 49.
[74] *Caudle v. Betts*, 512 So. 2d 389, 390 (La. 1987)
[75] *Bulot v. Intracoastal Tubular Servs., Inc.,* 98–2105, p. 13 (La.App. 4 Cir. 2/24/99); 730 So.2d 1012, 1018, abrogated on other grounds by *Bulot v. Intracoastal Tubular Servs., Inc.*, 2004–1376 (La.App. 4 Cir. 11/3/04); 888 So.2d 1017.
[76] *Kelly v. W. Cash & Carry Bldg. Materials Store*, 745 So.2d 743, 750 (La. Ct. App. 1999) (emphasis omitted) (quoting *Crossett v. Campbell*, 122 La. 659, 48 So. 141, 143 (1908)).
52926

unlawfulness of the detention."⁷⁷ As discussed above, Deputy Winburn is only alleged to have arrested Brandi Causer. There has been no allegation that he detained Lisa Causer. Even if there was such an allegation, Plaintiffs fail to plead with specificity that such a detention would have been unlawful. Thus, the false imprisonment claim against Deputy Winburn is dismissed without prejudice for failure to plead facts in support of the claim.

### 6. Failing to Provide Medical Attention

It is unclear from Plaintiffs' *Complaint* whether the claim styled as "failing to provide medical attention"⁷⁸ is intended as an alleged federal constitutional violation pursuant to 42 U.S.C. § 1983, or as a state law claim sounding in negligence. Because the *Complaint* does not mention the Eighth Amendment, deliberate indifference, or any of the other trappings of a claim related to inadequate medical care under 42 U.S.C. § 1983, the Court presumes the claim is a state law claim for negligent medical treatment.

Louisiana courts evaluate negligence claims using the duty/risk analysis. The duty/risk analysis consists of the following factors: (1) did the defendant owe a duty to the plaintiff; (2) was the duty breached; (3) was the conduct in question a substantial factor in bringing about the harm to the plaintiff, *i.e.*, was it a cause-in-fact of the harm which occurred; (4) was the risk, and harm caused, within the scope of protection afforded by the duty breached; and (5) actual damage.⁷⁹ For liability to be found, Plaintiff must prove all five separate factors.⁸⁰ Plaintiffs' *Complaint* lacks any reference to the above elements;

---

⁷⁷ *Kennedy v. Sheriff of E. Baton Rouge*, 935 So.2d 669, 690 (La. 2006).
⁷⁸ Rec. Doc. No. 1, p. 7.
⁷⁹ *See Williams v. Domino's Pizza, Inc.*, 2001 WL 6724, at *4 (E.D.La. Jan. 2, 2001); *Roberts v. Benoit*, 605 So.2d 1032, 1041 (La.1991); *see also Wiltz v. Bayer CropScience, Ltd. P'ship*, 645 F.3d 690, 698 (5th Cir. 2011).
⁸⁰ *Mathieu*, 646 So.2d at 322.
52926

moreover, Plaintiffs allege that Lisa Causer "made multiple requests for an ambulance" and that "an ambulance did arrive."[81] When a nurse at the jail where Lisa Causer was booked "advised that Mrs. Causer needed medical attention," Plaintiffs allege that she was "taken for medical treatment."[82] Because the elements of negligence cannot be gleaned from the *Complaint*, and because Plaintiffs' own allegations suggest Lisa Causer was indeed given medical attention, Deputy Winburn is entitled to dismissal of any state law claims against him for failing to provide medical attention, without prejudice.

### D. Leave to Amend

When a complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend before dismissing the action with prejudice unless it is clear that the defects in the complaint are incurable.[83] Accordingly, Plaintiffs are granted leave to amend their *Complaint* in accordance with this Court's *Ruling*.

---

[81] Rec. Doc. No. 1, p. 6.
[82] Rec. Doc. No. 1, p. 6.
[83] See *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002); see also *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification ... is considered an abuse of discretion.") (internal citation omitted).
52926

### III. CONCLUSION

For the reasons set forth above, the *Motion to Dismiss* is GRANTED, and all of Plaintiffs' claims against Defendant Cory Winburn are dismissed without prejudice. Plaintiffs are hereby granted leave to file an *Amended Complaint* and a Rule 7(a) answer to the defense of qualified immunity within thirty (30) days of the date of this *Ruling*.

Signed in Baton Rouge, Louisiana on <u>August 15, 2019</u>.

     *Shelly D. Dick*
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**