## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

LISA CAUSER, ET AL.

CIVIL ACTION

VERSUS

18-779-SDD-RLB

SHERIFF JASON ARD, ET AL.

## RULING

This matter is before the Court on the *Renewed Motion to Dismiss Pursuant to Rule 12(b)(6)*[1] filed by Defendant, Deputy Cory Winburn ("Deputy Winburn"), and the *Renewed Motion to Dismiss Pursuant to Rule 12(b)(6)*[2] filed by Defendant Jason Ard, Sheriff of Livingston Parish ("Sheriff Ard"). Plaintiffs Lisa Causer, Glenn Causer, and Brandi Causer ("Plaintiffs") filed a *Reply*[3] to each motion. For the reasons set forth below, the Defendants' *Motions* shall be granted.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On February 21, 2018, Plaintiffs Glenn and Lisa Causer were engaged in a dispute at their home with their adult daughter, Brandi, who "suffers from a bi-polar disorder and was angry because she was unable to obtain a ride to a substance abuse support group meeting."[4] The Causers called 911, requesting police assistance. Livingston Parish Sheriff's Deputies Dakota Naquin ("Deputy Naquin") and Cory Winburn ("Deputy Winburn") were dispatched to the Causers' residence in Denham Springs, Louisiana. Based on what transpired during the Causers' interaction with the Deputies (addressed

---

[1] Rec. Doc. No. 47.
[2] Rec. Doc. No. 48.
[3] Rec. Doc. No. 56 (as to Winburn's *Motion*); Rec. Doc. No. 55 (as to Ard's *Motion*).
[4] Rec. Doc. No. 59-1, p. 3, ¶ 11.
61526

in further detail in this Court's previous *Rulings* and *infra*), the Causers filed this action

pursuant to 42 U.S.C. §1983. Deputy Winburn and Sheriff Jason Ard filed *Motions to*

*Dismiss* based on the allegations in the *Complaint*, and this Court granted both of them,

dismissing the claims against Winburn and Ard without prejudice and giving the Causers

leave to file an *Amended Complaint*.[5] The Causers' *Amended Complaint* drew the instant

*Renewed Motions to Dismiss* from Deputy Winburn and Sheriff Ard.

The remaining claim against Deputy Winburn alleges that he is liable for failing to

intervene to prevent Deputy Naquin's alleged false arrest and use of excessive force

against Lisa Causer.  Deputy Winburn's *Renewed Motion to Dismiss* contends that this

bystander liability claim must fail because the Causers "have failed to overcome his

defense of qualified immunity."[6] Sheriff Ard's *Motion to Dismiss* asserts that the Causers'

*Amended Complaint* "does not add any new factual allegations in an attempt to support

their claims against Sheriff Ard"[7] – in other words, he argues, the *Amended Complaint* is

substantively identical to the *Complaint* that this Court already held to be deficient in its

previous *Ruling*. The Court will address these arguments in turn.

## II.    LAW AND ANALYSIS

### A. Motion to Dismiss Standard

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-

pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[8] The Court

may consider "the complaint, its proper attachments, documents incorporated into the

---

[5] *See* Rec. Doc. No. 39, Rec. Doc. No. 40.
[6] Rec. Doc. No. 47-1, p. 5.
[7] Rec. Doc. No. 48-1, p. 6.
[8] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
61526

complaint by reference, and matters of which a court may take judicial notice."[9] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[10] In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[11] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[12] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[14] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[15]  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[16]

---

[9] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[10] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).

[11] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter *Twombly*).

[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "*Iqbal*").

[13] *Twombly*, 550 U.S. at 570.

[14] *Iqbal*, 556 U.S. at 678.

[15] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

[16] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

61526

### B. Section 1983 Claims and Qualified Immunity

To state a claim under Section 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.[17] Here, Plaintiffs allege that Deputy Winburn violated Lisa Causer's Fourth Amendment right to be free from excessive force and false arrest by failing to prevent his fellow officer, Deputy Naquin, from violating that right himself.

### 1. Bystander Liability – Deputy Winburn

The Fifth Circuit has held that "an officer may be liable under § 1983 under a theory of bystander liability where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."[18] In its previous *Ruling* on this subject, the Court dismissed the bystander claim against Deputy Winburn because it found that the allegation "that he was on the scene and that he 'failed to intervene' constitutes only a bare bones recitation of the elements of a claim for bystander liability."[19] Plaintiffs' *Amended Complaint*[20] now alleges the following:

---

[17] *See Lefall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir.1994).

[18] *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cty.,* 302 F.3d 188, 204 (4th Cir. 2002)).

[19] Rec. Doc. No. 39, p. 9.

[20] A previous version of the *Amended Complaint* included additional allegations regarding Deputy Winburn, but that *Complaint* was improperly filed, and those allegations are not included in the most recent *Amended Complaint* filed by Plaintiffs on August 21, 2020 pursuant to this Court's *Order* (Rec. Doc. No. 58). The Court's *Order* clearly stated that the new *Amended Complaint* was to "include[] all of Plaintiffs' numbered allegations" and that it would "become the operative complaint in this matter without reference to any other document in the record." *Id.* Thus, the Court assesses the claim against Deputy Winburn by reference to the allegations contained in the most recent *Amended Complaint*, located at Rec. Doc. No. 59-1.
61526

- "Deputy Winburn, who was at all times present, failed to intervene and protect Plaintiffs upon witnessing the careless and aggressive acts of Deputy Naquin;"[21]

- "Deputy Winburn further escalated the violence by acting in an overly aggressive manner throughout the incident, by using vulgar and threatening language;"[22]

- "Deputy Winburn . . . placed Brandi Causer into handcuffs without incident;"[23]

- "Deputy Winburn was aware of the forgery by Deputy Naquin [of Lisa Causer's signature on a form for refusing medical treatment] but took no action to ensure that Mrs. Causer received medical treatment or to prevent the forgery and did not report the forgery to anyone in LPSO;"[24]

- "Deputy Winburn should have also reported the use of excessive force to a supervisor at LPSO, but he did not;"[25]

Because the *Amended Complaint* fails to cure the deficiencies cited in the Court's previous *Ruling*, the Court finds that Deputy Winburn's *Motion to Dismiss* should be granted as to the failure to intervene claim against him. The *Amended Complaint* merely restates the allegations that this Court previously found insufficient in its *Ruling* on the earlier *Motion to Dismiss*.[26] The only addition to the *Amended Complaint* is the allegation

---

[21] Rec. Doc. No. 59-1, p. 8.
[22] *Id.*
[23] *Id.* at p. 6.
[24] *Id.*
[25] *Id.* at p. 7.
[26] Rec. Doc. No. 39.
61526

that "Deputy Winburn was aware of the forgery by Deputy Naquin [of Lisa Causer's signature on a form for refusing medical treatment] but took no action to ensure that Mrs. Causer received medical treatment or to prevent the forgery and did not report the forgery to anyone in LPSO."[27] The conclusory allegation that Deputy Winburn "was aware of the forgery" is simply a restatement of the first element of a claim for failure to intervene, which requires that the officer "knows that a fellow officer is violating an individual's constitutional rights."[28] But Plaintiffs have not pled adequate facts to support their assertion that Deputy Winburn "was aware."[29] The *Amended Complaint* indicates that the alleged forgery took place "[w]hen an ambulance . . . arrive[d],"[30] but Plaintiffs do not allege where Deputy Winburn was located at that time nor what he was doing such that he was in a position to be "aware" of the alleged forgery. The boilerplate statement that Winburn was "at all times present" does not sufficiently plead knowledge to state a failure to intervene claim.

Even if Plaintiffs had adequately pled Deputy Winburn's knowledge of the alleged forgery, there are no allegations in the *Amended Complaint* that go to the other two elements of a failure to intervene claim, namely, that the officer "has a reasonable opportunity to prevent the harm and chooses not to act."[31] Plaintiffs in the *Amended Complaint* do not provide any facts to support these elements. If anything, the *Amended Complaint* suggests that Deputy Winburn was occupied by detaining Brandi Causer upon

---

[27] Rec. Doc. No. 59-1, p. 6.
[28] *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cty.,* 302 F.3d 188, 204 (4th Cir. 2002)).
[29] Rec. Doc. No. 59-1, p. 6.
[30] *Id.*
[31] *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cty.,* 302 F.3d 188, 204 (4th Cir. 2002)).
61526

the arrival of the ambulance. Overall, Plaintiffs' allegations on their failure to intervene claim offer little more than a recitation of the elements of the cause of action without factual support. In particular, Plaintiffs fail to establish Deputy Winburn's physical location at any given time in their version of events or to plead facts supporting their claim that he was "aware" of Deputy Naquin's forgery. Thus, Deputy Winburn's *Motion to Dismiss* shall be GRANTED. Because the Court finds that Plaintiffs have not adequately pled a constitutional violation as to Deputy Winburn, it does not reach the question of whether he is entitled to qualified immunity.

2. <u>Official Capacity Liability Under Section 1983 – Sheriff Jason Ard</u>

a) *Applicable Law*

A plaintiff asserting a Section 1983 claim against a municipal official in his official capacity or a Section 1983 claim against a municipality "must show that the municipality has a policy or custom that caused his injury."[32]  To establish an "official policy," a plaintiff must allege either of the following:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated the policymaking authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.[33]

---

[32] *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007).
[33] *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984).
61526

Although "a single decision may create municipal liability if that decision were made by a final policymaker responsible for that activity,"[34] absent an official policy, actions of officers or employees of a municipality do not render the municipality liable under Section 1983.[35]  A municipality cannot be held liable under Section 1983 for the tortious behavior of its employees under a theory of *respondeat superior*.[36]  "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."[37] "[T]o state a claim, plaintiffs must plead facts showing that a policy or custom existed, and that such custom or policy was the cause in fact or moving force behind a constitutional violation."[38]

The Supreme Court has held that municipal policies and practices amounting to deliberate indifference with respect to training, supervision, and/or hiring may give rise to Section 1983 liability. In the Fifth Circuit, an official is liable under Section 1983 for a failure to train or supervise only where a plaintiff establishes that: "'(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'"[39] In the context of failure-to-supervise claims, the Fifth Circuit has stated: "'for a supervisor to be liable . . . the focus must be on the adequacy of the training program in relation to the tasks the particular

---

[34] *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir.1996) (internal quotations and citations omitted) (emphasis in original).
[35] *Id.*
[36] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978).
[37] *Id.*
[38] *McClure v. Biesenbach*, 355 F. App'x 800, 803 (5th Cir. 2009) (citing *Spiller v. City of Tex. City Police Dep't.*, 130 F.3d 162, 167 (5th Cir. 1997)).
[39] *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009)).
61526

officers must perform.'"[40] "Moreover, 'for liability to attach based on an "inadequate training" claim, a plaintiff must allege with specificity how a particular training program is defective.'"[41]

> b) *Analysis*

Plaintiffs bring claims against Livingston Parish Sheriff Jason Ard in his official capacity.[42] Specifically, they allege that Sheriff Ard "failed to train, supervise, and discipline defendants Naquin and Winburn,"[43] and that he contributed to Plaintiffs' injuries "through his ratification and endorsement of, and deliberate indifference to, the conduct of his Deputies."[44] Sheriff Ard argues in his *Motion to Dismiss* that the claims against him fail because they are conclusively pled and lack factual support. This Court agreed in its previous *Ruling*, where it dismissed the claims against Sheriff Ard without prejudice and allowed Plaintiffs to file an *Amended Complaint*. The allegations against Sheriff Ard in the operative *Amended Complaint* are as follows:

- "Sheriff Ard failed to train, supervise, and discipline defendants Naquin and Winburn;"[45]

- "Sheriff Ard created an environment where deputies felt free to disregard the written policies and procedures of LPSO and disregard the constitutional protections provided to all citizens of the State of Louisiana and of the United States of America;"[46]

---

[40] *Goodman*, 571 F.3d at 395 (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)).
[41] *Id.* (quoting *Roberts*, 397 F.3d at 293).
[42] Rec. Doc. No. 59-1, p. 1.
[43] *Id.* at p. 8.
[44] *Id.* at p. 12.
[45] *Id.* at p. 8.
[46] *Id.*

61526

- "Sheriff Ard knew or should have known of the violent propensities and prior misconduct of these deputies as well as their disregard for the policies and procedures of LPSO and the laws of the State of Louisiana and the United States of America,"[47]

- "He allowed the creation of an atmosphere within LPSO such that deputies felt permitted to mistreated [sic] civilians, commit acts of excessive force, false arrest, and forgery under the belief that they had complete impunity to do so and could later cover up their actions through falsified police reports;"[48]

- Ard "condoned, ratified, and encouraged the policy and/or practice of the use of excessive force. These actions on the part of Sheriff Ard constitute gross negligence in supervising subordinates and reflect a deliberate indifference to the rights of other [sic] by failing to act after being provided with information that constitutional rights have been violated."[49]

These allegations expand upon original *Complaint* somewhat but are nonetheless too bare-bones and conclusory to survive the instant *Motion to Dismiss*. For the most part, the *Amended Complaint* repeats the allegations of the original *Complaint*, which alleged as follows:

> 52.    Defendant Jason Ard, individually and as head of the Livingston Parish Sheriff's Office is vicariously liable unto Plaintiffs as a matter of Louisiana state law for the acts and omissions of his deputies.
> 53.    Defendant Jason Ard, individually and as head of the Livingston Parish Sheriff's Office is liable to Plaintiffs for his ratification and endorsement of, and deliberate indifference to, the conduct of his Deputies,

---

[47] *Id.*
[48] *Id.*
[49] *Id.* at pp. 8-9.
61526

his failure to adequately train and supervise his Deputies and for all other acts and omissions as will be shown at trial.[50]

The Court previously adjudicated these allegations as inadequate, and Plaintiffs have not not offered additional factual support to merit any change in that finding. The Court is bound on a motion to dismiss to view the facts in the light most favorable to the Plaintiff, but legal conclusions do not suffice. As to Plaintiffs' statement that Sheriff Ard "created an atmosphere"[51] that was permissive of constitutional violations, this allegation is too ineffable and non-specific to give rise to a claim for failure to train and supervise.

As for Plaintiffs' contention that Sheriff Ard "knew or should have known of the violent propensities and prior misconduct of these deputies,"[52] the Court finds that, without factual support, the allegation is conjecture and presents nothing more than a *possibility* of liability; it is well-settled that the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[53] Overall, Plaintiffs do not adequately plead a failure to train and supervise claim against Sheriff Ard. They make no specific allegations about training whatsoever, let alone "allege with specificity how a particular training program is defective"[54] as required by the doctrine.

Nor have Plaintiffs adequately pled an official capacity claim against Sheriff Ard based on LPSO policy. To do so, they "must plead facts showing that a policy or custom existed, and that such custom or policy was the cause in fact or moving force behind a

---

[50] Rec. Doc. No. 1, p. 8.
[51] Rec. Doc. No. 59-1, p. 8.
[52] *Id.*
[53] *Ashcroft v. Iqbal*, 556 U.S. at 678 (2009).
[54] *Roberts v. City of Shreveport*, 397 F.3d 287,293 (5th Cir. 2005).
61526

constitutional violation."[55] The only officially promulgated policy mentioned in the *Amended Complaint* is the LPSO manual, which, per Plaintiffs, "provides that [LPSO] adheres to a use of force policy that follows a progressive continuum scale, which provides for steps in the escalation of force."[56] Plaintiffs do not allege facts showing that such a policy was the moving force behind any constitutional violation they allegedly suffered. In fact, the Court tends to agree with Sheriff Ard that Plaintiffs' allegations about this policy suggest only that Ard "maintained certain adequate and constitutional policies, but that those policies were not followed in this case."[57]

Likewise, where Plaintiffs allege that Deputy Winburn failed, as required by LPSO policy, to file a report based on the events at the Causer home, they do not state a case for official capacity liability against Sheriff Ard. Their allegation only tends to show that Ard had a policy requiring police reports; Deputy Winburn's alleged failure to write one cannot be imputed to Sheriff Ard as a source of official capacity liability, and the allegation that Ard had a practice of allowing his Deputies to "later cover up their actions through falsified police reports"[58] is conclusory, nor do Plaintiffs do not allege other, similar incidents to support their claim.

Plaintiffs perhaps attempt to allege official capacity liability based on a persistent, widespread practice where they refer to Sheriff Ard's alleged condoning of excessive force, but their allegations are bare-bones and offer only innuendo regarding the "atmosphere" at LPSO and certain unspecified prior violent actions by the Deputies made

---

[55] *McClure v. Biesenbach*, 355 F. App'x 800, 803 (5th Cir. 2009)(citing *Spiller v. City of Tex. City Police Dep't.*, 130 F.3d 162, 167 (5th Cir. 1997)).
[56] Rec. Doc. No. 59-1, p. 7.
[57] Rec. Doc. No. 48-1, p. 9.
[58] *Id.* at p. 4.
61526

defendants herein. These allegations are not sufficient to establish a persistent, widespread practice by Sheriff Ard and LPSO.

Overall, Plaintiffs have essentially restated their allegations from the original *Complaint*; allegations that this Court already found insufficient. Where Plaintiffs do expand on their original allegations, they do so in a conclusory manner that lacks the factual support necessary to make out a claim for official capacity liability on the part of Sheriff Ard. Accordingly, the Court finds that Sheriff Ard's Motion to Dismiss shall be granted.

## III.    CONCLUSION

For the reasons set forth above, the *Motions to Dismiss*[59] by Sheriff Jason Ard and Deputy Cory Winburn are hereby GRANTED and the claims against them dismissed with prejudice.

Signed in Baton Rouge, Louisiana on September 29, 2020.

CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

---

[59] Rec. Doc. Nos. 48 and 47.
61526